UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JENNIFER BERNICE BROWN,               ) | Civil Action No.: 4:12-cv-2311-DCN-TER |
|                                        ) | |
| Plaintiff,        ) | |
|                                        ) | |
| -vs-                                   ) | |
|                                        ) | **REPORT AND RECOMMENDATION** |
|                                        ) | |
| CAROLYN W, COLVIN[1],                  ) | |
| Acting Commissioner of Social Security; ) | |
|                                        ) | |
| Defendant.       ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), and 42 U.S.C. § 1383(c)(3) to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disabled widow's benefits (DWB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

**PROCEDURAL HISTORY**

Plaintiff filed an application for DWB on April 24, 2009, alleging a disability onset date of March 1, 1997. Her application was denied at all administrative levels and upon reconsideration. Plaintiff filed a request for a hearing. An administrative law judge (ALJ) held a hearing on October 21, 2010, and subsequently issued an unfavorable decision on December 14, 2010.[2] The Appeals

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Under the regulations, widows of insured individuals may be eligible to apply for insurance benefits under their deceased spouse's disability insurance benefits if they meet certain requirements. 20 C.F.R. § 404.335(c). The ALJ found Plaintiff met those requirements and could

Council denied Plaintiff's request for review on June 8, 2012, making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on August 13, 2012.

## PLAINTIFF'S ARGUMENTS

I. Plaintiff must be found disabled as the ALJ found in the hearing decision that she was restricted to a range of light work activity.

II. The ALJ erred in failing to properly consider the evidence in support of Plaintiff's status post ankle injury as a severe impairment, and the combined effects of obesity with an impaired musculoskeletal system.

Pl. Brief

## FACTUAL BACKGROUND

Plaintiff was born on October 3, 1950, and was 46 years of age on the alleged onset date of March 1, 1997.[3] She has at least a high school education and past relevant work in food service in a school.

## DISABILITY ANALYSIS

In the decision of December 14, 2010, the ALJ made the following findings of fact and conclusions of law:

1. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the

---

apply for widow's insurance benefits (Tr. 14). The criteria for establishing disability under widow's insurance benefits are the same as those for establishing disability under disability insurance benefits. Id. The claimant must demonstrate that he or she was disabled within seven years of his or her spouse's death. Id. This is referred to as the "prescribed period," and is the relevant period in a widow's insurance benefits case. Id.

[3]Plaintiff initially alleged an onset date in October of 2007, but later modified it to March 1, 1997. Based on the regulations governing widow's insurance benefits as set forth above in footnote 2, she is required to establish that she was disabled between March 1, 1997 and April 30, 2006–the date her widow's insurance benefits expired (hereinafter "the relevant period").

          non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

2.     The proscribed period ended on April 30, 2006.

3.     The claimant has not engaged in substantial gainful activity since March 1, 1997, the alleged onset date (20 CFR 404.1571, et seq.).

4.     The claimant has the following severe impairments: blindness of the right eye and obesity (20 CFR 404.1520(c)).

5.     The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (CFR 404.1520(d), 404.1525 and 404.1526).

6.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant can sit for 6 hours in an 8-hour day, with normal breaks, and she can stand and walk for 6 hours in an 8-hour day, with normal breaks. She can lift: a maximum of 50 pounds; 25 pounds occasionally; and 10 pounds frequently. The claimant must avoid squatting and crouching but can otherwise perform postural activities occasionally. She must avoid climbing ropes, ladders and scaffolds. She must avoid jobs requiring depth perception, night driving, hazardous machinery, and unprotected heights. She can read, write, add, and subtract and is right hand dominant.

7.     The claimant has no past relevant work (20 CFR 404.1565).

8.     The claimant was born on October 3, 1950, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

9.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

11.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

> 12. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 1997, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 14-20).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. <u>Myers v. Califano</u>, 611 F.2d 980, 982-83 (4th Cir. 1988); <u>Richardson v. Califano</u>, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## ARGUMENTS/ANALYSIS

### Step Four Analysis

In his decision, the ALJ found that Plaintiff

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant can sit for 6 hours in an 8-hour day, with normal breaks, and she can stand and walk for 6 hours in an 8-hour day, with normal breaks. She can lift: a maximum of 50 pounds; 25 pounds occasionally; and 10 pounds frequently. The claimant must avoid squatting and crouching but can otherwise perform postural activities occasionally. She must avoid climbing ropes, ladders and scaffolds. She must avoid jobs requiring depth perception, night driving, hazardous machinery, and unprotected heights. She can read, write, add, and subtract and is right hand dominant.

(Tr. 16). Plaintiff argues that, given the restrictions included by the ALJ in the residual functional capacity, Plaintiff is actually restricted to light work rather than medium work as found by the ALJ. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 CFR § 404.1567(c). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 CFR § 404.1567(b). Plaintiff argues that because the ALJ found that she was limited to lifting 25 pounds occasionally, rather than frequently as required for medium work, and as a result of the squatting and crouching restrictions, she would not actually be able to perform medium work activity at the physical level it is generally performed. Instead, she argues, because of the "negligible" difference between the ALJ's finding that she can lift 25 pounds occasionally and the definition for light work as lifting no more than 20 pounds, the ALJ's findings actually restrict her to light work, which would require a finding of a disability.

Commissioner argues that none of the limited medical evidence from the relevant period expressed any opinions of Plaintiff's functional limitations or included any evidence that she had any exertional limitations related to lifting, sitting, standing, walking, pushing or pulling. At the hearing,

-6-

the ALJ noted that the only medical evidence discussing Plaintiff's physical condition during the relevant time period was a treatment note from 2000 which described Plaintiff's strength as a "5+/5" in "all major" muscle groups, with with no deformities, limitations in movement, or crepitus in any of her joints (Tr. 211-12). The ALJ stated that such evidence demonstrated that Plaintiff was "very strong" at that time (Tr. 37). Nevertheless, the ALJ gave Plaintiff "the benefit of the doubt," and limited her to performing a range of medium work with several postural and environmental limitations (Tr. 18).

Next, because Plaintiff's residual functional capacity did not specifically fall within the medical-vocational guidelines for light exertional work or medium exertional work, the ALJ turned to the vocational expert to determine whether Plaintiff could perform other work which exists in the national economy. See 20 C.F.R. § 404.1569 (recognizing that the medical-vocational guidelines do not cover all possible variations of factors); 20 C.F.R. § 404.1566(e) (providing that the ALJ may use the services of a vocational expert in determining complex issues). When posed with whether she could identify any jobs which an individual of Plaintiff's age and residual functional capacity could perform, the vocational expert responded with three jobs (warehouse worker, hand packager and production helper), totaling 6,580,000 jobs in the national economy (Tr. 62-63).

Plaintiff argues that the vocational expert's testimony contradicts the Dictionary of Occupational Titles (DOT) and the vocational expert failed to provide a reasonable explanation for the conflicts as required by Social Security Ruling (SSR) 00-4p. Plaintiff argues that information in the DOT for the jobs identified by the vocational expert provides that each of the jobs requires medium work and according to her residual functional capacity, Plaintiff is unable to perform at the maximum level of medium work.

SSR 00-4p states that if there is a conflict between the vocational expert testimony and the

DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying upon the vocational expert's testimony to support a decision about whether a claimant is disabled. Specifically, SSR 00-4p reads as follows:

> This Ruling clarifies our standards for the use of vocational experts (VEs) who provide evidence at hearings before administrative law judges (ALJs), vocational specialists (VSs) who provide evidence to disability determination services (DDS) adjudicators, and other reliable sources of occupational information in the evaluation of disability claims. In particular, this ruling emphasizes that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved.

(SSR 00-4p).

At the hearing, the following colloquy took place:

ALJ: For the remainder of my questions then, confine your answers to the factors I tell you and keep in mind I am going to assume your responses are consistent with the definitions set forth in the Dictionary of Occupational Titles unless you tell me differently.
Assume an individual 55 years of age; she completed high school; she can read, write, add, and subtract; she is right hand dominant; assume that she can sit six hours in an eight-hour day with normal breaks; she can stand and walk six hours in an eight-hour day with normal breaks; she can lift a maximum of 50 pounds –
VE: How much?
ALJ: – 25 – 50, 5-0, 50; occasionally lift 25 pounds, which I would define is up to one-third of the work day; frequently lift 10 pounds which I will define as up to two-thirds of the work day; she can – make that she must avoid squatting and crouching, but can otherwise perform postural activities occasionally; she must avoid climbing ropes, ladders, and scaffolds; she must avoid jobs requiring depth perception, night driving, hazardous machinery, and unprotected heights.
Can you assume any jobs she could perform?
VE: Yes, Your Honor. One would be that of a warehouse worker; medium; SVP

>of 2; the DOT is 922.687-058; 36,200 in South Carolina; 2,220,000 in the United States.
>Also a hand packager; medium; SVP of 2; DOT is 920.557-018; 20,152 in South Carolina; 2,210,000 in the United States.
>Also a production helper; medium; SVP of 2; DOT is 691.687-010; 12,440 in South Carolina; 2,150,000 in the United States.

(Tr. 61-63). The ALJ then allowed Plaintiff's attorney to question the vocational expert. The ALJ asked no more questions of the vocational expert.

Specifically, the warehouse worker (DOT # 992.687.58) and production helper (DOT # 691.687-010) positions both require "Medium Work - Exerting . . . 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time)."[4] As stated above, the ALJ's hypothetical included the restriction of lifting 25 pounds occasionally defined as up to one-third of the working day. Thus, there appears to be a conflict. The ALJ did not question the vocational expert as to the inconsistencies in the jobs he cited and the hypothetical with regard to the frequency of lifting 25 pounds. Therefore, this conflict was not resolved.

Based on the above, the undersigned recommends that this case be remanded for an explanation as to the conflict or a finding by the ALJ as to whether the occupations of warehouse worker, hand packager and production helper are in conflict with the testimony of the vocational expert based on the hypothetical on which he relied in his decision.

**Plaintiff's Ankle Pain**

In her decision, the ALJ determined that any right ankle pain suffered by Plaintiff was a non-severe impairment. (Tr. 15). Plaintiff argues that the ALJ erred.

To be eligible for DWB, a claimant must show that the disability began no later than seven

---

[4] Although the vocational expert also named the job of hand packager with DOT # 920.557-018, the undersigned was unable to locate this DOT #. Nevertheless, the vocational expert identified the position as also requiring medium work.

-9-

years after the wage earner's (here, Plaintiff's husband) death. 20 C.F.R. § 404.335(c)(1). Plaintiff's husband died in April of 1999 (Tr. 30), and Plaintiff does not dispute the ALJ's finding that the prescribed period (or relevant period) ends April 30, 2006 (Tr. 14), that is, Plaintiff's disability must have begun no later than April 30, 2006.

> With respect to Plaintiff's right ankle pain, the ALJ found as follows:
>
> At a consultive examination in September 2009, the claimant reported right ankle pain. Adebola Rojugbokan, M.D., noted that the claimant exhibited marked tenderness on the scar area, slight swelling, limited range of motion, diminished muscular strength, and an abnormal gait, favoring the right side (Exhibit 6F). However, September 2009 treatment notes from Berkeley Medical Center reveal that the claimant was recovering from ankle surgery at that time (Exhibit 7F). In any event, Dr. Rojugbokan's examination of the claimant was performed more than three years after the prescribed period ended and there is no medical evidence that the claimant sought treatment for her right ankle pain during the period from her alleged onset date through April 30, 2006, the date the prescribed period ended. As mentioned previously, in order to be entitled to disabled widow's benefits, the claimant must establish that her disability began on or before April 30, 2006. Accordingly, the undersigned finds the claimant's right ankle pain is a non-severe impairment.

(Tr. 15).

In October 2000, Plaintiff reported to the Berkeley Medical Center with a complaint of a cyst on her left leg, between her ankle and her knee (Tr. 211). The doctor noted a past medical history of a right ankle fracture and surgery following a motor vehicle accident in 1997. (Tr. 211). Other than this notation, the medical records from the relevant period are void of any reference to Plaintiff's right ankle. Nevertheless, Plaintiff argues that the ALJ should have considered this past fracture and surgery when determining whether Plaintiff's right ankle pain was a severe impairment. She points to a medical record from February of 2009, submitted to the appeals council following the ALJ's decision, which indicates that Plaintiff "continues to wear ankle brace" (Tr. 266). Plaintiff appears to argue that, since this record from 2009 fails to indicate when she began to wear

the ankle brace, it supports a finding that she was wearing the ankle brace prior to April 30, 2006. However, this argument amounts to nothing more than speculation.

In addition, Plaintiff argues that her testimony during the hearing indicates that she suffered from difficulties with her ankle during the relevant period. Specifically, Plaintiff points to her testimony that she suffered from leg pain, saw an orthopedist and was unable to do certain jobs between 2000 and 2006 because they required a lot of standing and/or moving around. (Tr. 48-50). Plaintiff also cites to SSR 96-7p, and, thus, appears to argue that the ALJ failed to consider Plaintiff's testimony without making a credibility determination. However, Plaintiff's testimony cannot establish that Plaintiff had a medically determinable impairment during the relevant time period, because only an acceptable medical source can establish she had a medically determinable impairment. 20 C.F.R. § 404.1513(a). Social Security Ruling 96-7p's requirement that the ALJ make a credibility determination applies only "when the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established." Other than the doctor's notation from October 2000 that Plaintiff had a past medical history of a right ankle fracture and surgery following a motor vehicle accident in 1997 (Tr. 211), medical records from the relevant period include no complaints by Plaintiff of ankle pain, no notes by doctors regarding any ankle symptoms, no diagnoses, and no opinions of functional limitations due to Plaintiff's ankle. Thus, the ALJ did not err in finding that any right ankle pain suffered by Plaintiff was a non-severe impairment.

In addition, the undersigned finds no merit to Plaintiff's argument that the ALJ failed to consider her ankle pain in combination with her obesity. In her decision, the ALJ specifically noted:

> [a]lthough there is no specific listing for evaluating the claimant's obesity under the Listing of Impairments, the undersigned has considered Social Security Ruling 02-01.

-11-

> However, there is no convincing evidence in the record that the claimant's obesity has increased the severity of the claimant's coexisting or related impairment to the extent that the combination of impairments meets the requirements of a listing. Therefore, the criteria for this Ruling are not met.

(Tr. 16).

In sum, substantial evidence exists in the record to support the ALJ's findings that Plaintiff's ankle pain is a non-severe impairment and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (CFR 404.1520(d), 404.1525 and 404.1526). Nevertheless, as discussed above, remand is appropriate for an explanation in accordance with SSR 00-4p as to the conflict or a finding by the ALJ as to whether the occupations of warehouse worker, hand packager and production helper are in conflict with the testimony of the vocational expert based on the hypothetical on which he relied in his decision.

## **CONCLUSION**

Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631 (c) (3) of the Social Security Act, 42 U.S.C. Sections 405 (g) and 1338 (c) (3), it is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED to the Commissioner for further administrative action as set forth above.

                                                       s/Thomas E. Rogers, III
                                                       Thomas E. Rogers, III
                                                       United States Magistrate Judge

February 5, 2014
Florence, South Carolina